## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW HENNIE, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| ICOT HEARING SYSTEMS, LLC D/B/A LISTENCLEAR and ICOT HOLDINGS, LLC, | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

_____/

### Preliminary Statement

1.      Plaintiff Matthew Hennie ("Plaintiff" or "Mr. Hennie") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      In violation of the TCPA, Mr. Hennie alleges that ICOT Hearing Systems, LLC d/b/a ListenClear ("ListenClear") along with its parent holding company, ICOT Holdings, LLC ("ICOT Holdings") (collective referred to as

"Defendants") commissioned pre-recorded telemarketing calls to Mr. Hennie and other putative class members without their prior express written consent.

3.     These calls were made pursuant to an arrangement between ListenClear and Prospect DM, LLC, an international telemarketing company ("Prospect DM").

4.     Mr. Hennie and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Hennie brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5.     A class action is the best means of obtaining redress for the Defendant' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.     Plaintiff Matthew Hennie resides in the Northern District of the state of Georgia.

7.      Defendant ICOT Hearing Systems, LLC d/b/a ListenClear is a domestic limited liability company with a registered agent of Matt Whelan, 300 Bull St., Suite 200, Savannah, GA 31401.

8.      Defendant ICOT Holdings, LLC is a domestic limited liability company with a registered agent of Matt Whelan, 300 Bull St., Suite 200, Savannah, GA 31401.

## Jurisdiction & Venue

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

10.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     The Court has personal jurisdiction over ListenClear and ICOT Holdings because of their registration with the State of Georgia. In addition, both ListenClear and ICOT Holdings maintain their principal place in Georgia.

3

Furthermore, the defendant directed their telemarketing conduct into this District, including to Mr. Hennie.

12.    Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

## TCPA Background

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

14.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to

persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

15.    According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be

obtained "without requiring, directly or indirectly, that the agreement
be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of
1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

ICOT Holdings Is Liable For Illegal Telemarketing Conducted By Or On Behalf
Of ListenClear

18.   ICOT Holdings owns and controls ListenClear.

19.   ICOT Holdings' officers and directors direct and control the business
strategy and daily operations of ListenClear and exert operational control over
ListenClear.

20.   ICOT Holdings' officers and directors direct and control ListenClear's
sales and marketing strategy, including the use of illegal telemarketing calls.

21.   On information and belief, ICOT Holdings and ListenClear arbitrarily
allocate funds between and amongst themselves. ICOT Holdings pays routine
expenses for ListenClear, performs accounting services for ListenClear, and
reports ListenClear's earnings and losses to its shareholders.

22.   Further, ICOT Holdings and ListenClear share assets, revenues, and
access to capital.

23.    ICOT Holding has taken out, and paid for, insurance policies that have ListenClear as the insured.

24.    ICOT Holdings and ListenClear manifest a unity of business interest and operate under the single trade name, ListenClear.

25.    ListenClear manifests no separate corporate interests of its own and functions solely to achieve the business purposes and strategy of ICOT Holdings.

26.    ListenClear performs services sufficiently important to ICOT Holdings that absent ListenClear, ICOT Holdings would perform those services itself.

27.    In fact, ICOT Holdings has pursued the legal interests relevant to ListenClear's business practices in courts. *See e.g. ICOT Holdings, LLC v. Tracy Young, et al.*, Court of Appeals of Georgia, No. A18A1427 (March 16, 2018).

Calls to Mr. Hennie

28.    Plaintiff Hennie is a "person" as defined by 47 U.S.C. § 153(39).

29.    Mr. Hennie's telephone number, (404) 754-XXXX, is registered to a cellular telephone service.

30.    Mr. Hennie was sent repeated calls on behalf of ListenClear and ICOT Holdings from Prospect DM, including on the following dates:

• September 19, 2017

- September 20, 2017
- September 22, 2017
- September 23, 2017
- September 25, 2017
- September 26, 2017
- September 27, 2017
- September 29, 2017
- September 30, 2017
- October 2, 2017
- October 5, 2017
- October 7, 2017
- October 10, 2017
- October 13, 2017
- October 16, 2017
- October 18, 2017

31.     Each of the calls began with the use of a pre-recorded message, and the goal of these calls was to sell ListenClear goods and services.

32.     Plaintiff is not a customer of any of the Defendants and has not provided any Defendant with his personal information or telephone numbers or otherwise consented to receive telemarketing calls prior to the receipt of these calls.

33.      Unfortunately, the Plaintiff's experience with ListenClear is not unique.

34.      Other individuals have registered complaints with the Better Business Bureau about ListenClear's telemarketing practices:

8

I, too, received an unsolicited call from a recording ("*****"). This is the 4th such call, each from a different spoofed number, that I have received in as many days. This time, I played the game, answering all the questions in a way that would get me to a real person so I could find out what company was pulling this scam. I then kept the "sales rep" on the phone long enough to get through her whole script. She got to the point where she needed my personal information. I explained that I would not give that to her and she got nasty. As she tried to regain her composure, she said that even if they did "accidentally" charge my card before they're supposed to or for more than they're supposed to, they would refund the money. Clearly I wasn't going to net her a sale, so she hung up on me. I was just trying to figure out their game/scam in the hopes that enough people will report them and they will be shut down and unable to scam folks who might not be realize it's a scam. BBB, I implore you to get the word out and protect those who are vulnerable to this. Thank you!

Jen E., August 11, 2017. *See* https://www.bbb.org/north-east-florida/business-reviews/hearing-assistive-devices/listenclear-in-savannah-ga-235966740/reviews-and-complaints (Last Visited May 1, 2018).

35.    Due in part to these complaints, the Better Business Bureau has given ListenClear a "D" rating.

36.    Other individuals on different websites have also registered complaints about Listen Clear's telemarketing conduct:

> For several Months Now I keep getting PHONE CALL after PHONE CALL from this Company . Ive been polite and asked to be removed This has happened EVERYTIME IVE MADE CONTACT WITH A HUMAN AFTER THAT FAKE COMPUTER

Jerrod Adams, July 26, 2017

**Telemarketing Scam Company**

This Company called my number which is on the DNC list 4 - 5 times from 4 - 5 different numbers, within the span of 4 hours.

Absolutely ridiculous and illegal. After staying on the line I got enough information about this company to find out about them and will be filing an FCC complaint later today.

For people looking for hearing product, the above behaviour should be clear to you that this is NOT a legitimate company, this is NOT a legal business. Be careful and do not trust them, go some where else where you're likely to receive legitimate support and business.

A legitimate company does not have to use illegal telemarketing tactics.

Wiegraf, May 3, 2017. *See* https://www.trustpilot.com/review/listenclear.com

(Last Visited May 1, 2018).

37.     Plaintiff and the other call recipients were harmed by these calls.

They were temporarily deprived of legitimate use of their phones because the

phone line was tied up during the telemarketing calls and their privacy was

improperly invaded. Moreover, these calls injured Plaintiff and the other call

recipients because they were frustrating, obnoxious, annoying, were a nuisance and

disturbed the solitude of Plaintiff and the class.

10

**ListenClear's Liability for ProspectDM's Conduct**

38.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

40.    In fact, the Federal Communication Commission has instructed that sellers such as ListenClear may not avoid liability by outsourcing telemarketing to third parties, such as Prospect DM:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive

11

and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

41.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

42.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

43.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

44.     ListenClear is directly liable for the Prospect DM telemarketing calls because it actively participated in the calls by "allow[ing] the outside sales entity access to information and systems that normally would be within the seller's exclusive control", when it allowed Prospect DM access to its telemarketing calling system because Prospect DM was able to automatically transfer call recipients to a ListenClear representative during the call.

45.     ListenClear also maintains interim control over Prospect DM, who hired Prospect DM to perform some of the tasks under Prospect DM's agreement with ListenClear, by dictating the parameters for potential prospects that they would accept, such as their age.

46.     Furthermore, ListenClear could have restricted Prospect DM, and the third parties it worked with, from using pre-recorded messages, but it didn't.

13

47.     ListenClear knew (or reasonably should have known) that Prospect DM was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts "warm transfer" calls from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

48.     In fact, ListenClear had previously received complaints from the Better Business Bureau and other entities for illegal telemarketing prior to the calls to the Plaintiff.

49.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information."  *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

14

## Class Action Allegations

50.     As authorized by Rule 23 of the Federal Rules of Civil Procedure,

Plaintiff brings this action on behalf of a class of all other persons or entities

similarly situated throughout the United States.

51.     The Class of persons Plaintiff proposes to represent is tentatively

defined as:

> All persons within the United States to whom: (a) ListenClear and/or a
> third party acting on their behalf, made one or more non-emergency
> telephone calls; (b) that could have promoted ListenClear's products
> or services; (c) to their cellular telephone number; (d) using an
> automatic telephone dialing system or an artificial or prerecorded
> voice; and (e) at any time in the period that begins four years before
> the date of the filing of this Complaint to trial.

52.     Excluded from the Class are counsel, the Defendants, and any entities

in which the Defendants have a controlling interest, the Defendants' agents and

employees, any judge to whom this action is assigned, and any member of such

judge's staff and immediate family.

53.     The Class as defined above is identifiable through phone records and

phone number databases.

54.     The potential Class's members number at least in the thousands.

Individual joinder of these persons is impracticable.

55.     Plaintiff is a member of the Class.

56.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

a.   Whether Defendant violated the TCPA by using pre-recorded messages to call putative class members' cellular telephones;

b.   Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

c.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

57.     Plaintiff's claims are typical of the claims of class members.

58.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

59.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

60.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Pre-Recorded Call provisions

62.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.    The Defendants violated the TCPA by (a) initiating pre-recorded telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

64.    The Defendants' violations were willful and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.      Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or a pre-recorded voice;

C.      Because of Defendants' violations of the TCPA, Plaintiff Hennie seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.      Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule

7.1D that the foregoing CLASS ACTION COMPLAINT has been prepared using

Times New Roman, 14-point font, as required in U.S.D.C. N.D. Ga. Local Rule

5.1C.

Dated: May 9, 2018          MATTHEW HENNIE, on behalf of himself
                            and others similarly situated,

                            By:

                            **THE KOVAL FIRM, LLC**

                            */s/ Steven H. Koval*
                            Steven H. Koval
                            Georgia Bar No. 428905
                            3575 Piedmont Road
                            Building 15, Suite 120
                            Atlanta, GA  30305
                            Telephone:  (404) 513-6651
                            Facsimile: (404) 549-4654
                            shkoval@aol.com