**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MATTHEW HENNIE, on behalf of     :
himself and others similarly situated,     :   Civil Action No. 1:18-cv-2045
    :
       Plaintiff,              :
    :
v.                        :
    :
ICOT HEARING SYSTEMS, LLC     :
D/B/A LISTENCLEAR and ICOT     :
HOLDINGS, LLC             :
    :
       Defendant.       :
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND INCORPORATED
<u>MEMORANDUM IN SUPPORT</u>**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ..............................................................................................4

    A.    The Settlement Administrator Successfully Executed The Notice
        Plan .............................................................................................................4

    B.    The Settlement Is Fair and Merits Final Approval .............................7

        1.    The Settlement Was the Result of Arm's-Length
            Negotiation Between the Parties with the Assistance of an
            Experienced Mediator. .............................................................9

        2.    The Settlement Satisfies Each of the Bennett Factors. .............11

            a)    Likelihood of Success at Trial.......................................11

            b)    Range of Possible Recovery and Point at which
                Settlement is Fair, Reasonable, and Adequate ...............14

            c)    Complexity, Expense, and Duration of Litigation .........17

            d)    Substance and Amount of Opposition to Settlement .....19

            e)    Stage of Proceedings at which Settlement was
                Achieved ......................................................................19

III.  CONCLUSION ..........................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. AllianceOne Receivables Mgmt.*,
  No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ........................................................17

*Arthur v. Sallie Mae*,
  No. C10-198, 2012 U.S. Dist. LEXIS 3313 (W.D. Wash. Jan. 10,
  2012) ................................................................................................................17

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984)....................................................................*passim*

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)..............................................................................14

*In re Capital One TCPA Litig.*,
  12-cv-10064 (N.D. Ill.) ......................................................................................16

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093 (N.D.
  Ga. Oct. 20, 2008) ......................................................................................*passim*

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..............................................................................19

*Chapman v. First Index, Inc.*,
  No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014) ..............................12

*Charvat v. Listen Clear*,
  4:17-cv-00245 (S.D. Ga. Dec. 14, 2017) .........................................................20

*Connor v. JPMorgan Chase Bank, N.A.*,
  No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) .....................................16

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977)..........................................................................17

*In re CP Ships Ltd. Sec. Litig.*,
    578 F. 3d 1306 (11th Cir. 2009) ....................................................................... 4, 7

*In re Enhanced Recovery Co.*,
    13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) ........................................... 16

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007) ............................................................ 14

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013) ............................................................................ 6

*Gascho v. Global Fitness Holdings, LLC*,
    2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ...................................................... 6

*Gehrich v. Chase Bank USA, N.A.*,
    12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016) ..................................... 15

*Guzman v. Consumer Law Grp., P.A.*,
    Civil Action No. 1:11-cv-00187-JRH, 2016 U.S. Dist. LEXIS
    62410 (S.D. Ga. May 11, 2016) .......................................................................... 8

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ................................................................. 10, 17

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013) .............................................................................. 6

*Jones v. Royal Admin. Servs. Inc.*,
    887 F.3d 443 (9th Cir. 2018) ............................................................................. 12

*Jurvis v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ........................................................................... 5

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 (9th Cir. 2018) ........................................................................... 12

*Malta v. Fed. Home Mortg. Corp.*,
    2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ......................................................... 6

*Martinez v. Excel Hosp., LLC*,
  No. 1:16-cv-1493-WSD, 2017 U.S. Dist. LEXIS 9964 (N.D. Ga.
  Jan. 24, 2017) ................................................................................. 9

*Melanie K. v. Horton*,
  No. 1:14-cv-710-WSD, 2015 U.S. Dist. LEXIS 103245 (N.D. Ga.
  Aug. 6, 2015) .................................................................................. 11

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................... 19

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 10, 2009) ...................................... 6

*Perez v. Asuiron Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................ 6

*Piambino v. Bailey*,
  757 F.2d 1112 (11th Cir. 1985) ....................................................... 7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ........................................................... 19

*Rose v. Bank of Am. Corp.*,
  No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29,
  2014) ............................................................................................... 16

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993) ...................................................... 18

*In re Smith*,
  926 F.2d 1027 (11th Cir. 1991) ....................................................... 11

*Spillman v. RPM Pizza, LLC*,
  No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23,
  2013) ............................................................................................... 17

*Steinfeld v. Discover Fin. Sers*.
  12-cv-01118 (N.D. Cal.) .................................................................. 16

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................10

*Thomas Krakauer v. Dish Network, L.L.C.*,
   Civil Action No. 1:14-CV-333 (M.D.N.C. 2017) ...............................................18

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ................................................................................7

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
   271 F.R.D. 668 (D. Wyo. 2011) ...........................................................................13

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
   274 F.R.D. 229 (S.D. Ill. 2011) ...........................................................................13

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ...................................................................................5

*West Virginia v. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................13

**Statutes**

47 U.S.C. § 227 .............................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .........................................................................................*passim*

Fed. R. Civ. P. 23(2) ...............................................................................................9

Fed. R. Civ. P. 23(3) ...............................................................................................9

Fed. R. Civ. P. 23(b)(3) ..........................................................................................5

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................4

Fed. R. Civ. P. 23(d) ...............................................................................................9

Fed. R. Civ. P. 23(e)(1) ...........................................................................................4

Fed. R. Civ. P. 23(e)(2) ...........................................................................................7

**Other Authorities**

Federal Judicial Center, *Judges' Class Action Notice and Claims
    Process Checklist and Plain Language Guide* (2010) ........................................5

Newberg on Class Actions (4th ed. 2002)..............................................................10

## I.    INTRODUCTION

Plaintiff, Matthew Hennie ("Plaintiff"), individually and on behalf of the class of persons he represents (the "Settlement Class" defined below) and Listen Clear, LLC" ("Defendant") (Plaintiff and Defendant are collectively referred to as the "Parties"), have reached a class action settlement of this matter and now petition the Court to grant final approval of that settlement.[1] The settlement includes the establishment of a $1,200,000 fund to be distributed *pro rata* to members of the class who have filed valid claims, after the payment of the costs of notice, administration, attorneys' fees and expenses and an incentive award to the Plaintiff.[2] There is no reverter to the Defendant of any portion of the Settlement Fund. The settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The parties negotiated the settlement with the assistance of Hunter Hughes, Esq., a highly skilled and experienced mediator, which included the exchange of detailed mediation statements. The relief provided meets the applicable standards of

[1] The Settlement Agreement is before the Court at *See* DE 24-1. The Defendant does not oppose this Motion insofar as it supports the proposed settlement. The Defendant does not concede or admit Plaintiff's assertions.
[2] Via separate motion, Class Counsel have moved for an award of attorneys' fees, expenses and an incentive award for the Plaintiff. S*ee* DE26.

fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Particularly relevant in this case, in addition to providing monetary relief to the class, the Defendant has agreed to take remedial steps to ensure its telemarketing going forward is TCPA compliant.[3] In addition, the Defendant is without financial means to provide full relief to the class and would be bankrupted if this case were to proceed to a trial resulting in a full judgment, or anything approaching it, in Plaintiff's favor.[4]

Pursuant to the Court-approved notice plan, direct individual notice of the Settlement was sent to the Settlement Class, consisting of the owners or users of

[3] Under Section 3(a)(5) of the Settlement Agreement, Listen Clear was required to:
- Implement enhanced TCPA compliance policies and procedures;
- Annually train staff on TCPA requirements;
- Utilize a compliance committee to regularly conduct internal TCPA compliance self-assessments;
- Engage a third-party to regularly conduct TCPA compliance assessments;
- Conduct commercially-reasonable due diligence on lead generation vendors prior to engaging them and on a regular basis thereafter;
- Contractually require lead generation vendors to comply with all applicable laws, including the TCPA, when conducting lead generation activities on behalf of ICOT;
- Monitor and track consumer complaints to identify and remediate compliance concerns.

[4] Listen Clear has agreed to provide Class Counsel with a disclosure as to its financial condition which confirms it is unable to sustain a class judgment.

360,055 unique phone numbers.[5] The Settlement Administrator successfully sent notice to over 77% of the Class. The reaction of the class to this settlement was overwhelmingly positive. Although the vast majority of the Class received actual notice of the Settlement, not one class member objected to the Settlement and only five consumers asked to be excluded from the Settlement. In total, the Settlement Administrator received 4,056 valid claim forms. The class members who took the time to file a valid claim will each receive $129.07 per claim. Following direct notice under CAFA to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected.

**In summary:**[6]

**Notice Reach:**        **77.4%**

**Claims Received:**        **4,056**

**Objections:**        **0**

---

[5] The release in this case is narrowly tailored to the owners or users of the phone numbers on the Class List and defined as including:

> Plaintiff and all called persons who were transferred to ICOT Hearing Systems, LLC d/b/a ListenClear after receiving a telemarketing call from Prospects DM at any time between August 1, 2016 and December 31, 2018.

*See* DE 24-1 at ¶2.

[6] *See* Exhibit 1, Declaration of Jay Geraci ("Geraci Decl.).

**Exclusions:**          **5**

**Estimated Recovery:**    **$129.07**

## II.    ARGUMENT

### A.    The Settlement Administrator Successfully Executed The Notice Plan

Rule 23 requires the court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

In order to satisfy these requirements, notice of a class settlement must "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determinations regarding whether the settlement serves their interests." *In re CP Ships Ltd. Sec. Litig.*, 578 F. 3d 1306, 1317 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Neither Rule 23 nor due

4

process requires receipt of actual notice by all class members, *Jurvis v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012), and the Federal Judicial Center has suggested that a notice plan that reaches 70% of class members is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/notcheck.pdf /$file/notcheck.pdf (Last Visited on 11.4.2017).

Here, the notice plan approved by the Court for the Rule 23(b)(3) Class provided exceptional notice that exceeds Rule 23 and due process requirements. This Court approved the notice plan set forth in the Settlement Agreement, which called for direct notice through US mail. The Claims Administrator followed the plan. *See* Geraci Decl. at ¶ 2-10. Through the discovery process, the Plaintiff was able to obtain the names of the owners or users of the 360,055 unique phone numbers that make up the class. *Id.* at ¶ 5-7. Notice was then successfully sent to over 77% of all class members. *Id.* at ¶ 10.

The mailed notice is presumptively reasonable, and satisfies Due Process. *See Weigner v. City of New York,* 852 F.2d 646, 650 (2d Cir. 1988) ("the Supreme Court has consistently held that mailed notice satisfies the requirements of due process."). Also, numerous courts have approved mailing summary notice to class

members. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *6-7, 29 (S.D. Ohio Apr. 4, 2014) (finally approving settlement with postcard notice sent to majority of class); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144, 151-52 (D.N.J. 2013) (finally approving settlement with postcard notice); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99 (E.D. Pa. 2013) (finally approving settlement with postcard notice); *Malta v. Fed. Home Mortg. Corp.*, 2013 WL 444619, at *11 (S.D. Cal. Feb. 5, 2013) (preliminarily approving settlement with postcard-type notice); *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *4 (D.N.J. Sept. 10, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (preliminarily approving settlement with postcard notice for non-current customers and bill stuffers for current customers); *Perez v. Asuiron Corp.*, 501 F. Supp. 2d 1360, 1375-77 (S.D. Fla. 2007) (finally approving settlement with postcard notice).

Second, the Claims Administrator established and maintained a Website dedicated to the Settlement, on which the administrator posted the Website Notice, Claim Form, and a copy of the Settlement Agreement. Geraci Decl. ¶ 11. Significantly, during the claims period, the Website had recorded 32,585 unique visits. *Id.*

Third, the Claims Administrator, working with the Parties' counsel, established and maintained a toll-free number to answer questions about the

Settlement and allow class members to request a written claim form or use their Claim ID to make a claim via telephone. Geraci Decl. at ¶ 11. As of this filing, the calling system had received 6,967 calls. *Id.* Thus, by multiple channels, the Settlement Class received ample notice and the opportunity to exercise their rights in response to it. In short, not only did the notice provided to the Class comply with the Court-approved amended Notice Plan, Rule 23, and Due Process, it was also ultimately successful.

**B.    The Settlement Is Fair and Merits Final Approval**

Under Rule 23, this Court may approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also, CP Ships*, 578 F.3d at 1317-18 ("The district court reviews a class action settlement to determine whether it is fair, reasonable and adequate."). In addition, the Court makes an inquiry to ensure that the settlement "is not the product of collusion between the parties." *Piambino v. Bailey*, 757 F.2d 1112, 1145 (11th Cir. 1985).

A proposed class action settlement should be reviewed in light of the strong public and judicial policy favoring settlement of class actions, and, in doing so, the Court should not substitute its judgment for that of the parties. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the

pretrial settlement of class action lawsuits"). In determining whether a settlement is fair, reasonable, and adequate, the Eleventh Circuit instructs courts to consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). Ultimately, "[a] settlement is fair, reasonable and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Guzman v. Consumer Law Grp., P.A.,* Civil Action No. 1:11-cv-00187-JRH, 2016 U.S. Dist. LEXIS 62410, at *7 (S.D. Ga. May 11, 2016). Here, the Settlement Agreement easily passes both tests, having been the product of arm's-

length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.[7]

### 1. The Settlement Was the Result of Arm's-Length Negotiation Between the Parties with the Assistance of an Experienced Mediator.

"The Court should be mindful of the strong presumption in favor of finding a settlement fair." *Martinez v. Excel Hosp., LLC*, No. 1:16-cv-1493-WSD, 2017 U.S. Dist. LEXIS 9964, at *5 (N.D. Ga. Jan. 24, 2017) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). As one distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *
>
> The initial presumption of fairness of a class settlement may be established by showing that: (i) the settlement has been arrived at by arm's-length bargaining; (ii) sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and] (iii) the proponents of the settlement are counsel experienced in similar litigation.

[7] Rule 23 was amended in December of 2018 to require, before final approval of a class action settlement that (a) the class representative and class counsel have adequately represented the class; (b) that the proposal was negotiated at arm's length; (c) that the relief to the class is adequate taking into (i) account the costs, risks and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(2)(3), and (d) the proposal treats class members equitably relative to each other. These requisites are largely redundant of the *Bennett* factors adopted by this Court.

Newberg on Class Actions, at § 11:41, 92-93 (4th ed. 2002). Here, all the prerequisites to the presumption of procedural fairness are met. First, the settlement only came after the completion of discovery period and the while the Court's class certification decision was pending.

Next, the work of an experienced mediator- here Hunter Hughes, Esq., confirms that the parties were not colluding. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."). Moreover, the Parties agreed on the terms of the Settlement through experienced counsel, who had at their disposal both prior to the mediation sessions and during subsequent negotiations ample information to evaluate the terms of any proposed agreement so as to reach a fair and reasonable compromise. The opinion of experienced counsel supporting the settlement, as here, is entitled to considerable weight. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's length negotiation conducted by experienced, capable counsel."). As such, it is clear that the Settlement was the result of arm's-length and informed negotiation between the Parties, and given that, this Court should not hesitate to approve it.

10

2.    **The Settlement Satisfies Each of the *Bennett* Factors.**

In addition to being the result of arm's-length negotiations free from fraud or collusion, the Settlement here also satisfies each of the *Bennett* factors.  While the Eleventh Circuit instructs district courts to consider the *Bennett* factors, "A trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008). Here, as explained below, each of the *Bennett* factors weighs in favor of approving the Settlement Agreement.

a)    **Likelihood of Success at Trial**

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial.  Where success at trial is not certain for plaintiff, this factor weighs in favor of approving the settlement. *See Melanie K. v. Horton*, No. 1:14-cv-710-WSD, 2015 U.S. Dist. LEXIS 103245 (N.D. Ga. Aug. 6, 2015).

This matter involved difficult legal questions. For example, Listen Clear was expected to argue that the class was unascertainable and thus uncertifiable as a class. Whether and when a TCPA class can be certified despite ascertainability

11

challenges is an open question, in particular because this Circuit has not yet weighed in following divergent approaches to TCPA ascertainability. *See, e.g.*, *Chapman v. First Index, Inc*., No. 09 C 5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) (citing cases), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015) ("Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case.").

As an even more fundamental issue, Listen Clear would argue that they were not vicariously liable for the actions of Prospects DM, the telemarketer who sent the calls at an issue, and a company that they filed a Third-Party Complaint against for breaching their agreement. The risk is particularly high as Circuit Courts of Appeals have affirmed summary dismissal of two TCPA cases recently, finding that the defendants could not be held vicariously liable for telemarketing calls made by third parties. *Jones v. Royal Admin. Servs. Inc.*, 887 F.3d 443 (9th Cir. 2018); *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010 (9th Cir. 2018).

Along the same lines, Listen Clear was expected to argue that it had significant consent defenses as to many members of the class. The litigation of those issues would involve complex analysis of the records maintained by lead generation entities removed from Listen Clear. Listen Clear was also expected to

contend that ambiguities regarding the nature of the call records would have made it difficult or impossible for the Court to resolve the claims of all class members in a single proceeding. In short, many of the issues underlying this matter involve unsettled legal questions, which are at the forefront of class action and consumer protection law, especially with respect to the TCPA.

Further, this settlement was reached following discovery and prior to class certification, which is not automatic in TCPA cases. *Compare, e.g.*, *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), and *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") The Plaintiff also faced a risk of losing at trial even if the class was certified. And, of course, even if the Plaintiff won on the merits, one or more appeals would be guaranteed. Thus, any recovery would be jeopardized and delayed for years. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079

13

(2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263

(2d Cir. 1979) (reversing $87 million judgment after trial).

Against the inherent uncertainty raised by these issues is the concrete nature

of the relief afforded under the Settlement, where Settlement Class Members will

recover a direct cash payment. As such, because ultimate success at trial is far from

certain, and the value of the Settlement is unquestionably strong in comparison, the

first *Bennett* factor weighs in favor of approving the Settlement.

### b) Range of Possible Recovery and Point at which Settlement is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors—the range of possible

recovery and the point on or below the range at which a settlement is fair, adequate

and reasonable—is often combined. *Carpenters Health & Welfare Fund v. Coca-*

*Cola Co.*, No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093, at *35 (N.D.

Ga. Oct. 20, 2008). As the Eleventh Circuit has recognized, no set formula exists to

determine where that point lies, "a just result is often no more than an arbitrary

point between competing notions of reasonableness." *Bennett v. Behring Corp.,*

737 F.2d 982, 987 (11th Cir. 1984). However, "the Court's role is not to engage in

a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed

settlement in its totality." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292,

1326 (S.D. Fla. 2007)

14

Although the settlement does not provide full potential monetary damages, that mere fact does not counsel in favor of denying final approval of this settlement because settlement "must be weighed against the risk of no recovery." *Carpenters Health & Welfare Fund* at *36. Here, while Plaintiff believes he would ultimately have prevailed on liability, it would have been extraordinarily difficult to obtain full monetary relief for Class members. Furthermore, even if $500 were awarded per call, given the size of the Settlement Class, a monetary judgment for full statutory damages would have been ruinous for even the largest of companies.

While $129 does not equal the maximum class members could receive under the TCPA, complete victory is not a prerequisite to class settlement approval. As one court recently noted "[t]he essential point here is that the court should not reject a settlement solely because it does not provide a complete victory to Plaintiff, for the essence of settlement is compromise." *Gehrich v. Chase Bank USA, N.A.*, 12 C 5510, 2016 WL 806549, at *7 (N.D. Ill. Mar. 2, 2016). (approving $34 million TCPA settlement for class of more than 32 million individuals with a per-claimant recovery of $52.50) (*citing Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). Here, as in *Gehrich*, "[i]ndividual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it

(reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Listen Clear], for its part, buys peace and mitigates risk." *Id*.

This number is also comfortably within the range of settlements deemed fair, reasonable and adequate by many courts in TCPA class actions. Indeed, courts have found similar TCPA class action settlements that paid far less to meet the standards for final approval. *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) (granting final approval to a settlement paying $11,268,058 on slightly less than 2.5 million accounts); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Holderman, J.) (final approval granted where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Steinfeld v. Discover Fin. Sers*. 12-cv-01118 (N.D. Cal.) (final approval of $46.98 per claimant); *In re Enhanced Recovery Co.*, 13-md-2398-RBD-GJK (M.D. Fla. July 29, 2014) at DE 123, p. 1 (only injunctive

relief for class) and ECF No. 124 (settlement granted final approval). Other examples abound.8

Due to the size of the class and scope of the damages, the $1,200,000 Settlement Fund, represents a fair compromise that recognizes the significance of the Settlement Class's claims, Listen Clear's promise to make remedial changes, and the ability of Listen Clear to make restitution.

### c)    Complexity, Expense, and Duration of Litigation

The next *Bennett* factor to consider is the complexity, expense, and duration of litigation. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes." *Carpenters Health & Welfare Fund* at *38; *Cotton*, 559 F.2d at 1330 ("'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'") (citation omitted). The Court is guided by "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennet*t, 737 F.2d at 986;

---

8 *See Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) ($9,750,000 to cover claims of over 1,400,000 class members); *Arthur v. Sallie Mae*, No. C10-198, 2012 U.S. Dist. LEXIS 3313 at *10, *20 (W.D. Wash. Jan. 10, 2012) (preliminarily approving settlement of $24,150,000 for class of 8,000,000 members), final approval granted at 2012 U.S. Dist. LEXIS 132413 (W.D. Wash Sept. 17, 2012); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* DE 109 at 10, 116 at 6, and 137).

*see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (noting that application of the Bennett factors "often justifies approving settlements that are substantial compromises of the relief that could be obtained through litigation;" and approving settlement because it was "consistent with and in some respects exceed[ed] the relief that the class could expect to obtain at trial").

In the absence of the settlement, it is certain that the expense, duration, and complexity of protracted litigation would be substantial. *See Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333 (M.D.N.C. 2017) (A TCPA class action trial done by Plaintiff's counsel that resulted in more than 50 motions after a class certification decision through the time of trial.). Additionally, if the Court were to rule on class certification or summary judgment, given the amount at issue, the losing side would likely seek relief from the Eleventh Circuit. In either case, continued litigation of this matter would delay resolution and inflict unnecessary additional expense on both sides. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993). Here, the settlement secures a substantial benefit for members of the Settlement Class, undiminished by further litigation expenses and without the attendant delay, risk and uncertainty of

continued litigation.

### d)    Substance and Amount of Opposition to Settlement

The next *Bennett* factor to consider is the substance and amount of

opposition to the settlement. Here, the Court-approved notice plan prompted no

objections and only five requests for exclusion. That there were no objections and

so few requests for exclusion, despite the comprehensive notice provided to the

class, demonstrates that class members find the agreement reasonable and fair, and

strongly favors approval of the settlement. *See In re Rite Aid Corp. Sec. Litig.,* 396

F.3d 294, 305 (3d Cir. 2005), as amended (Feb. 25, 2005)  (fact that only two class

members objected out of 300,000 weighed in favor of requested fee award); *In re*

*Cendant Corp. Litig.,* 264 F.3d 201, 234-35 (3d Cir. 2001) (affirming district

court's conclusion that the class' reaction was "extremely favorable" where

478,000 notices were sent, 4 objections were made, and 234 class members opted

out); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill.

2000) (fact that more than "99.9% of class members have neither opted out nor

filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd*.,

267 F.3d 743 (7th Cir. 2001).

### e)    Stage of Proceedings at which Settlement was Achieved

The final *Bennett* factor looks to the stage of proceedings at which the

settlement was achieved. Courts look at this factor "to ensure that plaintiffs have had access to sufficient information to evaluate the case and to determine the adequacy of the settlement." *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* No. 1:00-CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093, at *40 (N.D. Ga. Oct. 20, 2008).

Although this particular litigation was filed on May 9, 2018 (DE 1), the efforts of Class Counsel to hold Listen Clear to account for its telemarketing practices actually began in December of 2017, when the same legal team filed *Charvat v. Listen Clear,* 4:17-cv-00245 (S.D. Ga. Dec. 14, 2017). That case was ultimately dismissed because the call records as to Mr. Charvat were located overseas and could not be recovered. During the course of that litigation, however, Class Counsel became aware of a telemarketing vendor used by Listen Clear to call other consumers, including Mr. Hennie. Furthermore, Class Counsel engaged in discovery in *Charvat* to explore the potential vicarious liability of Listen Clear for the relationship it had with its telemarketing vendors. While the *Charvat* litigation was dismissed, the *Hennie* litigation was then filed that ultimately led to the proposed settlement. Accordingly, Class Counsel have been working on TCPA litigation involving Listen Clear since prior to December of 2017. Accordingly, the Settlement Agreement was not reached until Class Counsel were aware of the size

of the putative class, the range of damages, and had a full understanding of the strengths and weaknesses of the case. By the time the Settlement was reached, Class Counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of Settlement against continued litigation. The stage of proceedings factor thus weighs in favor of approval.

### III.    CONCLUSION

The Settlement Agreement here—which provides significant and immediate results for Settlement Class Members—was the result of arm's-length, informed negotiation and satisfies each of the *Bennett* factors. The Settlement Agreement also provides for extensive remedial measures to be taken by Listen Clear to ensure TCPA compliance going forward. As a result, the Settlement is fair, reasonable, and adequate under Rule 23, and Plaintiff respectfully request that this Court enter an order granting final approval.

Respectfully submitted for Plaintiff,

Dated: November 4, 2019        By: */s/ Steven H. Koval*

Steven H. Koval
Georgia Bar No. 428905
THE KOVAL FIRM, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Steve@KovalFirm.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
MCCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Email: mmccue@massattorneys.net

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Edward A. Broderick
Email: ted@broderick-law.com
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080

## **CERTIFICATE OF RULE 7.1 COMPLIANCE**

I hereby certify that on November 4, 2019, pursuant to L.R. 7.1D of the

Northern District of Georgia, I hereby certify that this document was prepared in

Times New Roman font, 14 point, pursuant to L.R. 5.1(C).

*/s/ Steven H. Koval*
Steven H. Koval

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2019, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will

automatically send notification of such filing to all attorneys of record.

*/s/ Steven H. Koval*
Steven H. Koval